**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| CHRISTINE GOLDEN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-13-0064 |
| | § | |
| YELLOWBOOK, INC., | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER**

This is a premises-liability case. The plaintiff, Christine Golden, delivered phone books for the defendant, Yellowbook, Inc., as an independent contractor. In February 2012, Golden fell off Yellowbook's dock as she was preparing to load phone books into her car for delivery. Golden broke her elbow, requiring a hospital stay and surgery. She sued Yellowbook in state court seeking $500,000 in actual damages, including past and future medical expenses and pain. Yellowbook removed to this court in January 2013. Yellowbook moved for summary judgment in September 2013, Golden responded, and Yellowbook replied. (Docket Entry Nos. 14, 18, 20). The parties also submitted supplemental briefs in compliance with this court's October 18, 2013 order asking the parties to discuss the application of a recent Fifth Circuit case and a Texas Supreme Court case. (Docket Entry Nos. 21, 22, & 23).

After a thorough review of the complaint, Yellowbook's motion for summary judgment, Golden's response, Yellowbook's reply, the summary-judgment record, and the supplemental briefing, Yellowbook's motion for summary judgment is granted and Golden's demand for a jury trial is denied as moot. Final judgment is entered by separate order.

The reasons for these rulings are explained below.

## I. Background

### A. The Summary-Judgment Record

The relevant facts are undisputed. Each year, Yellowbook hires independent contractors to deliver phone books from a warehouse to its subscribers. The work is seasonal. Deliveries begin in February and continue until the phone books have been delivered. Golden delivered phone books during two seasons.

Golden's first delivery season, beginning in February 2011, was without incident. The routine she followed called for her to go to the Yellowbook warehouse, sign an independent-contractor agreement, and receive a delivery route. She would pull her car up to the loading dock, a worker would stack her phone books at the end of the dock, and she would load her car with those books. She made four deliveries that year following this routine during the season.

Golden's second delivery season began on February 27, 2012, when she again signed an agreement to make the deliveries as an independent contractor. (Docket Entry No. 14-2). Unlike the prior season, she had to stack the books at the end of the dock before loading her car. (Docket Entry No. 18-2 at 9). Golden successfully completed the first delivery of the season. She stacked the books on the dock, loaded her car, and completed her deliveries. The next day, while she was following the same procedure, Golden fell off the dock, breaking her elbow.

At her deposition, Golden testified that nothing about the dock or the loading procedure had changed between day one and day two.

> Q: Was there anything different from Day 2 to Day 1, besides the fact that you fell?
> A: No.
> Q: The condition on the platform was the same the second day

2

>           as      the first day, correct?
>     A.    Yes.
>           . . . .
>     Q.    Okay. [T]he day you didn't fall, did you think that there was
>           anything dangerous about you having to put the books on the
>           dock and put them in your car?
>     A:    No.

(*Id*. at 8). Golden did not know what caused her to fall. When asked whether she slipped, tripped, or accidently stepped off the dock, she testified, "I just fell . . . I turned and the next thing I know I fell." (*Id*. at 9).

An ambulance drove Golden from the warehouse to a nearby hospital. She was admitted and remained there for seven days. She was discharged with implanted hardware and a full-arm cast. A week later, she was placed in a "mobile cast." She sees her doctor every six months for follow-up visits and takes pain medication as needed. Golden testified that she has incurred $80,000 in unpaid medical expenses.

### B. Procedural Posture and Allegations

In August 2012, Golden sued Yellowbook in state court. In December 2012, Golden amended her state petition to provide a specific statement as to damages. (Docket Entry No. 1-5). Golden alleged that Yellowbook owed her a "duty to protect [her as an] independent contractor from work-related hazards" because Yellowbook "retain[ed] some control over the details of car[rying] out the work." (*Id*. at ¶ 7). Golden alleged Yellowbook's duty extended to "ensur[ing] that all work place areas [were] free and clear from potential threats and dangers that can risk harm to any one on the premises." (*Id*. at ¶ 8). Golden alleged that Yellowbook breached that duty by failing to keep the "loading dock reasonably safe for [independent] contractors . . . including but not limited to the floor being cleared for safe and normal use." (*Id*.)

On January 1, 2013, Yellowbook removed the case to this court on the basis of federal diversity jurisdiction. (Docket Entry No. 1). On September 23, 2013, Yellowbook moved for summary judgment arguing that the premises-liability claim Golden asserted failed as a matter of law because the drop-off from the dock to the ground below was open and obvious. (Docket Entry No. 14).

On September 27, 2013, Golden filed a notice of nonsuit without prejudice, indicating that she "no longer desire[d] to prosecute all causes of action against" Yellowbook. (Docket Entry No. 15). Because Yellowbook had already filed its motion for summary judgment, on September 30, 2013, the court ordered Golden to "show cause why either: (1) the dismissal should not be granted with prejudice; or (2) the stipulation should not be withdrawn and the motion for summary judgment ruled on after the time for response has expired" by October 11, 2013. (Docket Entry No. 16). Golden did not explicitly respond to the show-cause order, but did respond to Yellowbook's summary-judgment motion.

The introduction to Golden's response included conclusory assertions not presented in the complaint. Golden asserted that Yellowbook was negligent by (1) "failing to provide Plaintiff any assistance to load the Yellowbooks on her vehicle"; (2) "fail[ing] to ascertain whether the Plaintiff was capable of working around elevated areas"; (3) failing to ascertain whether "Plaintiff was physically able to start and complete the job"; (4) failing to "supervise the unloading of the books"; and (5) failing "to ascertain whether Plaintiff was medically capable of loading that many books onto her vehicle." Golden attached an affidavit to her summary-judgment response stating that she "never expected to be asked to work on an elevated surface," and that she can "not see very well and as a result of that disability and as a result of not being provided any help by Yellowbook, I fell off

the work floor." (Docket Entry No. 18-1 ¶ 2). She was "so tired on that day that [she] was not aware that I was loading books near an elevated area that could cause me a bad fall." (*Id.*)

## II. The Summary-Judgment Standard

In deciding a summary-judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008). When the moving party has met its Rule 56 burden, the nonmoving party must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). "This burden is not satisfied with some metaphysical doubt as to the material facts, by unsubstantiated assertions, or by only a scintilla of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (internal quotation marks and citations omitted). Factual controversies resolve in the nonmoving party's favor, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Id.*

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by[] citing to particular parts of materials in the record including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of motion only), admissions, interrogatory answers, or other materials." FED. R. CIV. PRO. 56(c)(1)(A). A party can also show that cited materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. PRO. 56(c)(1)(B).

Summary-judgment evidence must be competent. The evidence cannot be hearsay, *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 510 n.5 (5th Cir.), or unsubstantiated

assertions, *VRV Development v. Mid-Content Cas. Co.*, 630 F.3d 451, 455 (5th Cir. 2011). In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075. Resolving actual disputes of material facts in favor of a nonmoving party "is a world apart from assuming that general averments embrace the specific facts needed to sustain the complaint. . . . It will not do to presume the missing facts because without them the affidavits would not establish the injury that they generally allege." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

The summary-judgment evidence includes Golden's deposition testimony; the independent-contractor agreement that Golden signed on February 27, 2012; pictures of the dock; and Golden's affidavit.

### III.     Discussion

#### A.     Premises Liability

"Premises liability is a special form of negligence where the duty owed to the plaintiff depends upon the status of the plaintiff at the time the incident occurred." *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005) (citing *M.O. Dental Lab v. Rape*, 139 S.W.3d 671, 675 (Tex. 2004); *Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292, 295–96 (Tex. 1983)). A plaintiff generally falls in one of three status categories: trespasser, licensee, or invitee. *See, e.g.*, *Lechuga v. S. Pac. Transp. Co.*, 949 F.2d 790, 794 (5th Cir. 1992). "[S]tatus is a legal question except when sufficient issues of fact exist to warrant submission to a jury." *Id.* Independent contractors are treated as invitees. *See Gen. Elec. Co. v. Mortiz*, 257 S.W.3d 211, 217 (Tex. 2008); *see also Petri v. Kestrel Oil & Gas Props., L.P.*, 878 F. Supp. 2d 744, 778 (S.D. Tex. 2012) ("A property owner has a duty to inspect the premises and warn an independent contractor/invitee of conditions or defects 'that are

not open and obvious and that the owner knows or should have known exists.'" (quoting *Coastal Marine Serv. of Tex., Inc. v. Lawrence*, 988 S.W.2d 223, 225 (Tex. 1999)). "Unlike other invitees, independent contractors are hired for special projects that often entail special expertise, and can be expected to use whatever equipment or precautions are necessary so long as a hazard is not concealed." *Mortiz*, 257 S.W.3d at 217.

Premises liability may fall into two categories: "(1) defects existing on the premises when the independent contractor/invitee entered; and (2) defects the independent contractor created by its work activity." *Coastal Marine,* 988 S.W.2d at 225; *see also Mortiz*, 257 S.W.3d at 214–15 (Tex. 2008) (describing "negligent activity theory" and "premises condition theory" of liability); *Clayton W. Williams, Jr., Inc. v. Olivo*, 952 S.W.2d 523, 527 (Tex. 1997) (stating that one in control of the premises "may be liable for two types of negligence in failing to keep the premises safe: that arising from *an activity* on the premises, and that arising from a *premises defect*." (emphasis added (citing *Redinger v. Living, Inc.,* 689 S.W.2d 415, 417 (Tex. 1985)).

"The Texas Supreme Court has consistently recognized that negligent-activity claims and premises-defect claims involve two independent theories of recovery that fall within the scope of negligence." *Oncor Elec. Delivery Co., LLC v. Murillo*, — S.W.3d —, 2013 WL 5372544, at *10 (Tex. App. —Houston [1st Dist] Sept. 26, 2013) (citing *Mortiz*, 257 S.W.3d at 214–15). "'[N]egligent activity encompasses a malfeasance theory based on affirmative, contemporaneous conduct by the owner that caused the injury.'" *Id.* (quoting *Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 776 (Tex. 2010)). "Recovery on a negligent activity theory requires that the person have been injured by or *as a contemporaneous result of* the activity rather than by a condition created by the activity." *Id.* (quotation marks omitted) (emphasis in original).

Golden asserts a premises-defect claim. Her complaint alleges that Yellowbook "breached [a] duty to Plaintiff by failing to keep [its] loading dock reasonably safe for [its] contractors, including [Golden]." Although she also alleges that Yellowbook had a "duty to ensure that all work place areas are free and clear from potential threats and dangers that can risk harm to any one on the premises [and that it] failed to keep the dock clear of these dangers including but not limited to the floor being cleared for safe and normal use," (Docket Entry No. 1-5 at ¶ 8), this allegation fails as a matter of law because the dock's elevation was an open and obvious hazard and there is no basis to infer any other unsafe condition on the dock that had any causal role in her fall.

"Premises owners and occupiers owe a duty to keep their premises safe for invitees against known conditions that pose unreasonable risks of harm." *TXI Operations, L.P. v. Perry*, 278 S.W.3d 763, 764 (Tex. 2009) (citing *CMH Homes, Inc. v. Daenen*, 15 S.W.3d 97, 99 (Tex. 2000)). "Under the [premises defect] subcategory, the premises owner has a duty to inspect the premises and warn the independent contractor/invitee of dangerous conditions that are not open and obvious and that the owner knows or should have known exist." *Coastal Marine*, 988 S.W.2d at 225. "Only concealed hazards–dangerous in their own right and independent of action by another–that are in existence when the independent contractor enters the premises fall into this first subcategory of premises defects." *Id.*

Golden has not pointed to summary-judgment evidence supporting an inference that the dock was defective or presented a dangerous condition other than the drop-off from the dock to the ground, which was open and obvious. Golden stated in her deposition that she successfully completed the same task the day before her injury and the dock condition was the same the second day as the first. (Docket Entry No. 18-2 at 8). She testified that she "just fell" and that she did not

8

trip over or slip on anything on the dock floor. (*Id.* at 9). A five-foot drop off a loading dock is an open and obvious danger, which Golden had successfully navigated in the past. Golden has not pointed to summary-judgment evidence indicating that the dock was defective or its elevation concealed.

In response to Yellowbook's motion for summary judgment, Golden maintains that the elevation of the dock was not an "open and obvious hazard to a worker who was not used to working around elevated areas or was not medically able to complete the job of unloading books around elevated areas." (Docket Entry No. 18 at 2). She argues that she "can show that the premises had a defect that was not open and obvious to a person with [her] state of mind. She was tired, had poor vision, and had never worked around an elevated area." (*Id.*). She asserts that there are disputed facts material to determining whether the dock was an open and obvious danger. Even assuming that she was not "used to working" on a dock, was medically unable to appreciate elevation due to poor vision, and was tired, Golden's response fails to create a material issue of fact for two reasons.

"[W]hether a dangerous condition is concealed or obvious is not controlled by whether the invitee had personal subjective knowledge or awareness of it." *Martin v. Gehan Homes Ltd.*, No. 03-06-584-CV, 2008 WL 2309265 (Tex. App. –Austin 2008, no pet.). The Texas Supreme Court has held that premises owners have the duty to warn their invitees of dangerous conditions that are not open and obvious. But the premises owner does not have a separate duty to ask whether an invitee was in fact aware of what was objectively open and obvious. *See, e.g., Cent. Ready Mix Concrete Co., Inc. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007) ("[T]he dangers of rolling an employee about inside a concrete mixer are so obvious they cannot constitute a concealed hazard imposing . . . a duty to warn."); *Wilhelm v. Flores*, 195 S.W.3d 96, 98 (Tex. 2006) (per curiam) ("Nor would

Wilhelm, as occupier of the premises where the beehives were kept, have owed an independent contractor's employees a duty to warn them about being stung, since the danger was obvious.").

The summary-judgment evidence also shows that Golden subjectively knew about the dock's elevation. Golden's deposition testimony and the undisputed evidence that she had completed the same task successfully the previous day belie her assertions:

> Q: [L]et's go back to the day before, [the day Golden did not fall,] when you got the books in position and you back[ed] your car up, then do you stand on the ground and grab them . . . out of the dock?
> A: Correct
> Q: And you put them in the trunk or the back seat or whatever?
> A: Correct.
> Q: All right. Are you able to reach them from the ground or do you have to, once you've gotten the ones in front, go back up there and move some further up or can you reach them at all?
> A: I don't stack them. When I was - when I was up there [on the dock], I don't stack them to where I can't reach them when I know I'm only 5-foot—I'm 5-foot 3 and the dock is 5-foot. So, I know I'm not gong to stack them books as high as Where I can't reach them.
> . . . .
> Q: You're five, three and you think the dock is five feet high?
> A: Yes.
> Q: So, when you're standing–your standing at it, it's almost at your eye level or nose level basically, correct.
> A: Correct.

(Docket Entry No. 18-2). Earlier in the deposition, Golden stated that she would not have jumped off the dock because she knew it was unsafe. (*Id.* 7-8). The dock elevation was objectively open and obvious, and Golden subjectively knew about drop from the dock to the ground. (*Id.*)

Golden has not pointed to summary-judgment evidence suggesting that the dock's elevation was not open and obvious or that the dock was defective in another way.[1] There is no duty to warn

---

[1] "The no-duty doctrine in Texas required a plaintiff who was injured on the premises of a defendant to prove not only that the owner had violated a legal duty to him, but also to negate his own knowledge and

of an objectively open and obvious danger, especially when, as here, the plaintiff demonstrates knowledge of that hazard.

### B. Golden's New Negligence Theories

Golden's introduction to her response brief summarily asserts five new theories of general negligence beyond the premises-liability claim asserted in her complaint. Golden did not plead these theories. A properly pleaded complaint must give "fair notice of what the claim is and the grounds upon which it rests." *Ashcroft v. Iqbal*, 556 U.S. 662, 698–99 (2009) (quotation omitted). The only facts and legal claims alleged in the complaint involved a premises-defect claim. "[D]istrict courts do not abuse their discretion when they disregard claims or theories of liability not present in the complaint and raised first in a motion opposing summary judgment." *De Francheschi v. BAC Home Loans Servicing, L.P.*, 477 F. App'x 200, 204 (5th Cir. 2012) (unpublished) (citing *Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005); *Fisher v. Metro. Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir. 1990); *sScheve v. Moody Found.*, 264 F.3d 1141 (5th Cir. 2001) (unpublished), *cert. denied* 534 U.S. 1156 (2002)). These new summary allegations are properly

---

appreciation of the danger." *Thomas v. Inernorth, Inc*. 790 F.2d 1253, 1256 (5th Cir. 1986). "In *Parker v. Highland Park, Inc*., the Texas Supreme Court abolished the no-duty rule and held that the injured party had no duty to prove his freedom from contributory negligence." *Id.* (citing *Parker v. Highland Park, Inc.*, 565 S.W.2d 512 (Tex. 1978). "The abrogation of the no-duty rule does not relieve a plaintiff from proving that the defendant had a duty and breached it." *Id.* (citing *Dixon v. Van Waters & Rogers*, 682 S.W.2d 533 (Tex. 1973)). To the contrary "[l]ike any other negligence action, a defendant in a premises case is liable only to the extent it owes the plaintiff a legal duty." *Mortiz*, 257 S.W.3d at 217. Under Texas law, a premises owner and occupier has no duty to protect an invitee from open and obvious dangers on the premises and must only protect against concealed dangers. The dock's elevation was open and obvious, and Golden testified that she was aware of the dock's elevation. "*Parker* abolished a certain kind of no-duty defense, not all duty questions whatsoever. The question in *Parker* was not whether the defendant owed the plaintiff a duty . . . . The question instead . . . , was whether the plaintiff had to prove she had no knowledge of the" danger. *Id.* at 216. Here, the court is not requiring Golden to prove that she was free from contributory negligence. Golden's testimony that the dock's elevation was open and obvious is relevant to resolve the duty question, a question of law for this court to decide. *See Martin v. Gehen Homes Ltd.*, No. 03-06-564-CV, 2008 WL 2309265 (Tex. App. –Austin 2008, no pet.)

11

disregarded.

## IV.    Conclusions

For the foregoing reasons, Yellowbook's motion for summary judgment is granted. Golden's demand for a jury trial is moot. Final judgment is separately entered.

SIGNED on January 27, 2014, at Houston, Texas.

Lee H. Rosenthal
United States District Judge